[No. 20026. Department One. January 8, 1927.]

GEORGE ATKINSON, *Respondent*, v. A. N. McCARTHY
et al., *Respondents*, AMERICAN SAVINGS BANK &
TRUST COMPANY, *Appellant*, M. NAKATA
et al., *Interveners and Respondents.*[1]

[1] PARTIES (36)—INTERVENTION—GROUNDS. In an action for the
foreclosure of a logger's lien upon logs in possession of a bank,
it is proper for one holding the legal title and the right to
possession to intervene and wage his claim against the bank.

[2] WAREHOUSEMEN (3)—WAREHOUSE RECEIPTS—NEGOTIABILITY AND
TRANSFER.—RIGHTS OF HOLDER. A bank holding logs under ware-
house receipts and indorsing the receipts and selling the same
and the logs represented thereby to an innocent purchaser for
value, upon the representation that it had good title, is liable
to the purchaser for failure of title through liens against the
logs in another county, under Rem. Comp. Stat., § 3630, which
provides that one negotiating and transferring a warehouse re-
ceipt by indorsement warrants that he has legal right to nego-
tiate the same and transfer the title and is without knowledge
of any fact impairing its validity or worth.

[3] COSTS (40)—ATTORNEYS' FEES—ALLOWANCE. In an action to
foreclose a logger's lien, in which an innocent purchaser inter-
vened and obtained judgment against the vendor appearing and
defending against the lien, it is error to allow the vendor an
attorneys' fee of one hundred dollars.

Appeal from a judgment of the superior court for
Clallam county, Ralston, J., entered January 4, 1926,

[1]Reported in 251 Pac. 861.

in favor of the intervener, in an action to foreclose a logger's lien, tried to the court. Modified.

*Stratton & Kane,* for appellant.

*Bausman, Oldham & Eggerman* and *Edw. L. Rosling,* for respondents.

MITCHELL, J.—McCarthy and Norberg, as partners in the logging business, cut thirty thousand feet of spruce logs and delivered them to the Port of Seattle. The port issued its three negotiable warehouse or wharf receipts for the logs, reciting that the logs were to be delivered to the American Savings Bank & Trust Company, Seattle, upon payment of charges and surrender of the receipt properly endorsed. George Atkinson thereafter commenced an action to foreclose a lien he had filed for labor performed in securing the logs. His complaint was against McCarthy and Norberg, the American Savings Bank & Trust Company and the Port of Seattle. Before the trial of the case, other lien claimants intervened in the action to foreclose liens for stumpage and for services rendered in getting out the logs. The bank, after receiving the warehouse receipts, sold the logs to M. Nakata, a sole trader doing business as M. Nakata Co. Nakata intervened in the action and, among other things, filed a cross-complaint against the bank and the Port of Seattle. The issues tendered in the cross-complaint against the bank were answered by it. McCarthy and Norberg and the Port of Seattle made no appearance in the case and orders of default were entered against them. Upon the trial of the case, the court made findings and conclusions, upon which judgment was entered foreclosing the liens as preferred claims in amounts which, together with attorney's fees allowed the lien claimants, were in excess of the fair market value of the logs as found by

the court. It also found and gave judgment in favor of M. Nakata against the bank and the Port of Seattle and each of them in the sum of $807.51 with interest. The bank has appealed from that portion of the judgment in favor of M. Nakata against the bank and the Port of Seattle. M. Nakata will be spoken of as the respondent.

We do not quite understand from the arguments in appellant's brief or otherwise why it is objecting to the judgment against the Port of Seattle. The Port of Seattle is not objecting, and it appears to us that the judgment against the port in no way concerns the rights of the appellant.

[1] At the commencement of the original action, respondent was the owner of the title to the logs. He had the right as such owner to intervene in the action, which the court allowed him to do. At the time of intervening, the Port of Seattle no longer held the logs for the owner and holder of the receipts issued by it, but, without taking up such receipts or having the court impound them, the port had delivered the logs to the sheriff as statutory receiver upon the commencement of the action. The port so notified the respondent and stated further that it would not deliver the logs upon surrender of the receipts, except as ordered by the receiver. These things were alleged in the cross-complaint. It was further alleged in the cross-complaint that, upon learning that the foreclosure suit had been commenced and the logs seized, the respondent promptly demanded of the bank that it free the logs of all other claims because of the sale of the logs by the bank to him, and that the bank refused so to do. With respondent's title and right to demand possession of the property involved and denied, there is no merit in appellant's contention that respondent's cross-complaint was premature. Nor is there any merit in ap-

pellant's contention that respondent had no right in this action to wage his claim against the bank. The foreclosure suit was in equity. His claim against the bank was incidental to the subject-matter involved in that suit. It arose out of the sale of the logs involved in the controversy. The parties, that is respondent and the bank, cross-plead and tried out the issues thus presented. The bank's oral objection at the trial, after considerable testimony had been taken, to the trial of the cross-complaint against the bank and that it did not state facts sufficient to constitute a cause of action was also without merit.

[2] The principal contention on behalf of the appellant is that it is not liable to respondent at all. Respondent sued the bank to recover the amount he paid for the logs. He told the bank or its representative, before making the purchase, that he would not buy the logs except upon the bank's credit. Atkinson, the original plaintiff in the action, testified that an officer of the bank who had charge of the deal with Nakata stated to him, the witness, that he had sold the logs free and clear of the labor. The transaction between the bank and respondent occurred in Seattle, the logging was done in another county. He had no actual notice of the existence of any lien or right of lien against the logs.

The trial court found, upon what we are satisfied was a preponderance of the evidence, that respondent

"  . . .  told the representative of said bank that said intervener would not accept the credit of the said McCarthy and that if said intervener purchased said logs said intervener would rely solely upon the credit of said defendant American Savings Bank & Trust Company, and that said bank thereupon sold said warehouse receipts and the logs represented thereby to said intervener, and that thereupon and upon said condition and understanding said defendant American

Savings Bank & Trust Company delivered to said intervener said negotiable warehouse receipts duly indorsed, and said intervener paid said defendant the American Savings Bank & Trust Company the amount of said purchase price."

The court further found that the amount paid was the fair market price of the "warehouse receipts and the logs represented thereby."

At the time of the sale and delivery of the warehouse receipts to respondent, he took from the representative of the bank handling and delivering the receipts and making the collection a receipted invoice, or bill of sale, signed in the name of the bank by its representative.

Rem. Comp. Stat., § 3630 [P. C. § 7184], dealing with negotiable warehouse receipts, says:

"A person who for value negotiates or transfers a receipt by indorsement or delivery, including one who assigns for value a claim secured by a receipt, unless a contrary intention appears, warrants,

"(a) That the receipt be genuine.

"(b) That he has a legal right to negotiate or transfer it.

"(c) That he has knowledge of no fact which would impair the validity or worth of the receipt, and,

"(d) That he has a right to transfer the title to the goods, and that the goods are merchantable or fit for a particular purpose whenever such warranties would have been implied, if the contract of the parties had been to transfer without a receipt the goods represented thereby."

As already stated, the bank indorsed and delivered the receipts for full value. Each indorsement contained an express stipulation against warranties of quality and quantity, but was silent as to title. Upon these facts, we think it must be held that the bank became liable to the purchaser upon the failure of title

of the property and that the judgment accordingly was correct.

[3] The court allowed respondent an attorney's fee of one hundred dollars in the judgment against the bank. Counsel for respondent state that the one hundred dollars is insisted upon as an element of damage sustained in defending against the liens. The bank was already a defendant in the action as it was originally commenced and by its answer put in issue the allegations of the complaint of the lien claimants. It appeared at the trial and bore the burden of the defense against all the lien claimants. The efforts on behalf of the respondent were given almost exclusively to his cross-complaint against the bank. The bank was defending against the attack upon the title to the property it had conveyed to the respondent, and, under all the circumstances, we think an attorney's fee should not have been allowed.

Remanded, with directions to the superior court to modify the judgment by striking out the allowance for attorney's fee.

TOLMAN, C. J., MAIN, FULLERTON, and HOLCOMB, JJ., concur.